# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LESTER V. HALL, JR., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Case No. 1:13-cv-01855-SAB <br><br> ORDER DENYING PLAINTIFF'S SOCIAL SECURITY APPEAL <br><br> (ECF Nos. 14, 17, 18) |

## I.

## INTRODUCTION

Plaintiff Lester V. Hall ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for supplemental security income pursuant to the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff suffers from a seizure disorder, organic mental disorder and affective disorder. For the reasons set forth below, Plaintiff's Social Security appeal shall be denied.

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge. (See ECF Nos. 8, 9.)

1

# II.

# FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff protectively filed an application for supplemental security income on April 22, 2010. (AR 241.) Plaintiff's application was initially denied on October 20, 2010, and denied upon reconsideration on February 11, 2011. (AR 73-76, 80-85.) Plaintiff requested and received a hearing before Administrative Law Judge Robert Milton Erickson ("the ALJ"). Plaintiff appeared for a hearing on July 17, 2012. (AR 36-69.) On August 29, 2012, the ALJ found that Plaintiff was not disabled. (AR 12-22.) The Appeals Council denied Plaintiff's request for review on September 18, 2013. (AR 1-3.)

### A. Hearing Testimony

Plaintiff testified at the July 17, 2012 hearing and was represented by counsel. Plaintiff had not worked since January 1, 2009, and was released from prison on May 23, 2012. (AR 41-43.) Plaintiff lives in his own room at a halfway house. (AR 61.) He has his own room because he has issues being around other people and needs a bottom bunk due to his seizures. (AR 61.)

Plaintiff attended some junior high school and passed because he was athletic. (AR 50.) Plaintiff completed seventh or eighth grade, but his learning is only a second or third grade level. (AR 50-51.) Plaintiff can recognize some small words. (AR 57.) Plaintiff brings someone with him if he needs to fill out forms. (AR 57.)

Plaintiff was taken away from his parents due to his mental issues and placed in a group home when he was nine or ten years old. (AR 56.) He lived in the group home until he was a teenager and then was placed in foster care. (AR 56.) Plaintiff has only lived on his own when he was homeless. (AR 57.) Plaintiff was previously receiving Social Security in his twenties, but it was terminated when he was sent to prison. (AR 55.)

Plaintiff has depression and anger flare-ups. (AR 59.) He does not want to be around people when he is depressed and stays to himself. (AR 59-60.) He feels sad and cries a lot. (AR 60.) Plaintiff is receiving mental health treatment which is helping him. (AR 60.)

Plaintiff has never had a driver's license. (AR 44.) Plaintiff is able to ride for an hour and a half in the car without stopping. (AR 44-45.) Plaintiff is able to use public transportation

1  and requests the assistance of the bus driver to direct him to the proper transfer station because
2  he cannot read. (AR 45.) Plaintiff lives in a third floor apartment and sometimes uses the stairs
3  with a little difficulty. (AR 47.) Plaintiff does not know how to use a computer and does not
4  attend movies. (AR 48.) Plaintiff watches television, but loses focus after a few minutes. (AR
5  48-49.) Plaintiff has never used alcohol, marijuana, methamphetamines, cocaine, or heroin. (AR
6  50.)

7       Plaintiff is unable to read because he cannot see and does not understand the words. (AR
8  45.) Plaintiff was told that he probably needs to see an eye doctor. (AR 46.) Plaintiff has
9  seizures where he loses consciousness and does not remember anything afterwards. (AR 47.)
10 Plaintiff's last seizure was one month prior to the hearing. (AR 48.) Plaintiff can walk for about
11 five minutes before his legs give him difficulty. (AR 49.) Plaintiff can only sit for about fifteen
12 minutes due to his back. (AR 49.)

13      Plaintiff does not do any cooking because the apartment he lives in has a dining area
14 where they feed the residents. (AR 52.) Plaintiff is only allowed to go out for one hour per day
15 because he is on probation. (AR 52.) When Plaintiff was released from prison in 2010 he was
16 homeless and living in his car. (AR 53.) He would go to homeless shelters. (AR 53-54.) He
17 would sometimes sit down while waiting in line. (AR 54.) Plaintiff would not socialize with
18 other people at the shelter. (AR 54.) He does not have any friends. (AR 61.)

19      Plaintiff was required to work for about two hours for an inventory service in 2010. (AR
20 44.) Plaintiff worked at Goodwill for about six months in 2007 while he was in a halfway house.
21 (AR 58.) The halfway house got him the job under the disabled program. (AR 57-58.) Plaintiff
22 was offered a job doing light work, such as folding clothes which is what he did. (AR 57.) The
23 job was part-time, but sometimes they needed him to work more hours. (AR 58.) The halfway
24 house took a percentage of his paycheck. (AR 58.) Plaintiff put clothes on the racks and sat.
25 (AR 59.)

26      A vocational expert ("VE") Daniel Labrosse testified at the hearing. Presuming that
27 Plaintiff's work at Goodwill was substantial gainful employment, the VE characterized it as a
28 laborer, stores, helping to set up displays, folding clothes and putting things away, DOT

1  922.687-058, medium, unskilled, SVP 2.  (AR 63.)

2  The ALJ presented a hypothetical of an individual who has no exertional, postural, manipulative, visual, or hearing limitations; limited to simple, repetitive tasks, and once trained on simple, repetitive tasks would require additional supervisory instruction in those tasks five times a week.  (AR 63.)  The individual could never drive a commercial vehicle, be exposed to unprotected heights or close to hot objects.  (AR 63.)  The VE opined that the competitive labor market would not tolerate an individual who required supervisory instruction every day or five times per week.  (AR 63-64.)  There would be no jobs that this individual would be able to perform in the national economy outside of supportive employment.  (AR 64.)

The ALJ presented a second hypothetical of an individual with no exertional, postural, manipulative, visual, or hearing limitations; able to understand and carry out very simple instructions; able to maintain adequate concentration, persistence, and pace for simple tasks, but not complex tasks; can have occasional interaction with the public and co-workers; and must have a clearly established job routine.  (AR 65.)  The VE opined that this individual would be able to work as a store laborer.  (AR 65.)

The ALJ presented a third hypothetical of the same individual with no past relevant work experience, only an eighth grade education, and age 44 to 48.  The VE opined that this individual would be able to work as a commercial or institutional cleaner, DOT 381.687-014, heavy, unskilled, SVP 2, 206,460 jobs in the national economy and 20,408 in California; kitchen helper, DOT 318.687-101, medium, unskilled, SVP 2, 504,280 jobs in the national economy and 67,990 in California.  (AR 66-67.)  The VE testified that there would be a wide range of unskilled jobs available for this individual.  (AR 67.)

**B.    ALJ Findings**

The ALJ found that Plaintiff has not engaged in any substantial gainful activity ("SGA") since the date of his application.  (AR 17.)  Plaintiff has the following severe impairments: organic mental disorder, affective disorder, and seizure disorder.  (AR 17.)  Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.  (AR 17.)

4

Plaintiff has the residual functional capacity to perform a full range of work at all exertional levels with the following nonexertional limitations. (AR 19.) He is able to understand, remember, and carry out very simple instructions; has adequate concentration, persistence and pace for simple, but not complex tasks; is limited to occasional interaction with the public and co-workers; and must have a clearly established job routine with very infrequent changes in routine. (AR 19.)

Plaintiff is capable of performing past relevant work as a store laborer and has not been under a period of disability as defined in the Social Security Act from the date his application was filed. (AR 21-22.)

## III.

## LEGAL STANDARD

To qualify for disability insurance benefits, the claimant must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. § 404.1520; Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1194 (9th Cir. 2004).

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In reviewing findings of fact in respect to the denial of benefits, this court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means more than a scintilla, but less than a preponderance. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations and citations omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of

1 Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

2 "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill, 698 F.3d at 1159 (quoting Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006). However, it is not this Court's function to second guess the ALJ's conclusions and substitute the court's judgment for the ALJ's. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

## IV.

## DISCUSSION AND ANALYSIS

Plaintiff contends that the ALJ erred by not properly analyzing whether his prior employment was substantial gainful activity qualifying as prior work and by finding that Plaintiff was not a credible witness, and that substantial evidence does not support the decision that Plaintiff can perform the job of store laborer as actually and generally performed. (AR 17.)

### A.   Past Relevant Work

Plaintiff argues that the ALJ erred by presuming that Plaintiff's past work was substantial gainful activity and failing to consider his employment at Goodwill as a subsidy. (Memo. for Summary Judgment or Remand 18, ECF No. 14.) Defendant counters that the ALJ properly considered that Plaintiff worked for Goodwill as a store laborer for approximately six months, determined that this was past relevant work, and there is no evidence in the record to show that this was "sheltered work." (Def.'s Opp. to Pl.'s Opening Brief 5-6, ECF No. 17.)

At step four, it is the claimant's burden to show that he does not have the residual functional capacity to perform "past relevant work." Lewis v. Apfel, 236 F.3d 503, 515 (9th Cir. 2001) (citing 20 C.F.R. §§ 404.1520(e) & 416.920(e); Tacket v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999)). Past relevant work is work that was done within the last 15 years, lasting long enough for the claimant to learn to do it, and that was substantial gainful activity. 20 C.F.R. §§ 404.1560(b)(1) & 416.960(b)(1); see also id. at §§ 404.1565(a) (explaining the 15–year guide for determining SGA) & 416.965(a) (same). "A job qualifies as past relevant work only if it

involved substantial gainful activity." Lewis, 236 F.3d at 515.

1. <u>Substantial Gainful Activity</u>

"Substantial work activity is work activity that involves doing significant physical or mental activities." 20 C.F.R. § 404.1572(a); 20 C.F.R. § 416.972(a). Work may be substantial even if the claimant does less, gets paid less, or has less responsibility than when he worked before. 20 C.F.R. § 404.1572(a); 20 C.F.R. § 416.972(a). Gainful work activity is work activity that is done for pay or profit regardless of whether a profit is realized. 20 C.F.R. § 404.1572(b); 20 C.F.R. § 416.972(b).

The ALJ found that Plaintiff's work as a store laborer was past relevant work because it was performed within 15 years, lasted long enough for Plaintiff to learn it, and was performed at substantial gainful activity levels. (AR 22.)

Plaintiff worked for Goodwill in 2007, which was within 15 years of the date of the hearing. Plaintiff testified at the hearing that he worked at Goodwill for approximately six months and sometimes worked part-time and sometimes worked more. (AR 58.) He folded clothes, put clothes on the rack, and sat. (AR 58-59.) He also reported that when working for Goodwill his job involved "[s]ecurity monitor [sic] customer movement". (AR 223.) This involved one hour of walking, two hours of standing, and one hour of sitting. (AR 223.) The VE opined that this was unskilled work. (AR 63.)

Unskilled work is defined as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. §416.968(a). The duties performed by Plaintiff, folding clothes, placing clothing on racks, and monitoring customer movement, would be the type of unskilled labor that would be learned in a short time. Plaintiff worked for a single employer for approximately six months performing the same duties during the time period. This would be sufficient for the ALJ to reasonably determine that the job had lasted long enough for Plaintiff to have learned it.

Plaintiff reported that he worked for Goodwill four hours per day, three days a week from 2007 through June 2008. (AR 218, 223.) Earning records show that Plaintiff received $6,509.82 in earnings for his employment at Goodwill. (AR 203.) The ALJ estimated that Plaintiff was

7

earning approximately $1,000.00 per month. (AR 58.)

During the time period relevant here, 2007, a claimant is considered to have engaged in substantial gainful activity if the monthly income, including income from a sheltered workshop, was more than $900.00 per month. 20 C.F.R. § 404.1574(b)(2); 20 C.F.R. § 416.974(b)(2); see also Substantial Gainful Activity, attached to Memo. for Summary Judgment as Exhibit B, ECF No. 14-3. Earnings above the statutory minimum create a presumption that the claimant engaged in substantial gainful activity. Katz v. Secretary of Health  Human Services, 972 F.2d 290, 293 (9th Cir. 1992). This presumption can be rebutted by factors such as the time spent working, quality of the claimant's performance, special working conditions, or the possibility of self-employment. Id.

Plaintiff's earnings of over $1,000.00 per month were over the statutory minimum of $900.00 per month creating the presumption that he was engaged in substantial gainful activity. Plaintiff's testimony that he sometimes worked part-time and received the job through the disabled program is not sufficient to rebut the presumption. Plaintiff did not meet his burden of rebutting the presumption and the ALJ reasonably found that Plaintiff's monthly earnings showed he was engaged in substantial gainful activity.

    2.    <u>ALJ's Duty to Develop the Record</u>

Plaintiff argues that the record was insufficient for the ALJ to determine that his prior employment was substantial gainful activity and the ALJ erred by failing to develop the record. When applying for disability benefits, the claimant has the duty to prove that he is disabled. 42 U.S.C. § 423(c)(5)(A). The ALJ has an independent "duty to fully and fairly develop the record and to assure that the claimant's interests are considered." Widmark v. Barnhart, 454 F.3d 1063, 1068 (9th Cir. 2006) (quoting Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983)). The ALJ has a duty to further develop the record where the evidence is ambiguous or the ALJ finds that the record is inadequate to allow for proper evaluation of the evidence. Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001); Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001). The ALJ may discharge this duty by subpoenaing or submitting questions to the claimant's physician, continuing the hearing, or keeping the record open after the hearing to allow the

claimant to supplement the record.  Tonapetyan, 242 F.3d at 1150.

In this instance, the ALJ did not find the record inadequate to allow for the proper evaluation of the evidence, nor is the evidence ambiguous.  Plaintiff argues that the finding that he earned over $6,000.00 in 2007 is questionable for three reasons.  (ECF No. 14 at 19.)  First, Plaintiff argues this is inconsistent with his life experience.  While Plaintiff's records do not show significant prior income, this is explained by the fact that he has spent the majority of his adult life in prison.  (AR 234.)  Further, the record demonstrates that he did work while he was incarcerated.  (See AR 346 (approved for temporary work assignment with no limitations); AR 368 (Plaintiff reports he worked in prison doing quality control, inspecting cables and other communication equipment for the military); AR 236 (detailing work assignments).)

Second, Plaintiff contends that this is a high amount of money considering that he is working for Goodwill.  However, Plaintiff reported that he was making $7.00 per hour from 2007 through June 2008.[2]  (AR 218, 222-223.)  Plaintiff's earning records reflect that he was paid $6,637.82 in 2007.  (AR 203, 206.)  The ALJ reasonably relied on Plaintiff's reported hourly rate, hours worked and length of employment to determine that he was making approximately $1,000.00 per month during this time period.

Third, Plaintiff argues that the record shows he earned coverage for four quarters in 2007.  (See AR 209.)  However, to the extent that this is inconsistent with Plaintiff's testimony, there is substantial evidence in the record to support the ALJ's finding that Plaintiff's earnings were above the statutory minimum in order for the presumption that the work was substantial gainful activity to arise.  Further, while Plaintiff testified that he sometimes worked part-time, Plaintiff has submitted his earning records which show that he was generally working five days a week during his employment with Goodwill and only on rare occasions worked seven rather than eight hours per day.  (ECF No. 18-2 at 14-15.)  Any failure to obtain records would be harmless as Plaintiff's testimony was contrary to his employment records in this regard.

Plaintiff argues for the first time on appeal that his employment was with a sheltered

---

[2] Employment records submitted by Plaintiff with his reply show that he was actually making $9.14 per hour.  (New Employee Information, ECF No. 18-2 at 2.)

9

1  workshop and his earnings were subsidized.  In determining if the claimant has been engaged in
2  substantial gainful activity, the ALJ is to consider earnings from work activities, including work
3  in a sheltered workshop or comparable facility set up for severely impaired persons.  20 C.F.R. §
4  404.1574(b)(2); 20 C.F.R. § 416.974(b)(2).  The value of any subsidized earnings is subtracted
5  from the gross earnings and the result is the amount considered in determining if the claimant
6  engaged in substantial gainful activity.  20 C.F.R. § 404.1574(b)(1); 20 C.F.R. § 416.974(b)(1).

7      Working in a sheltered workshop does not establish that the claimant was not earning the
8  amount paid.  20 C.F.R. § 404.1574(a)(3).  The regulations provide that work done under special
9  conditions to account for an impairment may show that the claimant does not have the necessary
10 skills and ability to work at the substantial gainful activity level and will not be considered
11 substantial gainful activity, such as where it involves minimal duties that make few demands on
12 the claimant, the claimant is of little use to the employer, or the work is done under special
13 conditions.  20 C.F.R. § 416.973(b)(c).  Examples of such situations include requiring assistance
14 from other employees in performing work, irregular hours or frequent rest periods, special
15 equipment or assignment especially suited to an impairment, specially arranged circumstances
16 such as other individuals preparing the claimant for getting to and from work; lower standard of
17 productivity than other employees, or opportunity to work due to family relationship, past
18 association with the employer or the employer's concern for the claimant's welfare.  20 C.F.R. §
19 416.973(c).

20     Plaintiff testified that he was paid $7.00 per hour for the time that he worked.  He
21 performed duties requiring doing significant physical or mental activities, folding clothing,
22 hanging clothing on the shelves, and monitoring customer movement.  While Plaintiff now
23 argues that there was a marked discrepancy between his pay and the value of services he
24 provided and his employer demonstrated leniency toward him, there is substantial support in the
25 record for the ALJ to find that Plaintiff was paid for the value of the services that he provided to
26 his employer.

27     Plaintiff did not argue or present any evidence to the ALJ or Commissioner that his work
28 was done under special conditions.  Where, as here, a claimant is represented by counsel, he

must raise all issues and arguments at the administrative hearing to preserve them on appeal. Meanel v. Apfel, 172 F.3d 1111, 1115 (9th Cir. 1999). This rule is only excused to avoid manifest injustice. Id.

Plaintiff argues that manifest injustice would occur if new evidence is not considered because it would result in not considering the type of program in which Plaintiff was working. However, the VE testified that based upon the hypothetical presented, not only would Plaintiff be able to perform the jobs identified, but there is a wide range of unskilled employment that Plaintiff would be able to perform. (AR 66-67.) The Court finds that Plaintiff failed to rebut the presumption that he was engaged in substantial gainful employment and has not shown that manifest injustice would result from failing to consider the new arguments and evidence presented on appeal.

### B. Ability to Perform Past Relevant Work

At step four the burden is on the claimant to show that he can no longer perform his past relevant work. 20 C.F.R. § 404.1520(d); 20 C.F.R. 416.920(e); Clem v. Sullivan, 894 F.2d 328, 330 (9th Cir. 1990). While the burden at step four is on the claimant, the ALJ must make the requisite factual findings to support his conclusion. Pinto v. Massanari, 249 F.3d 840, 845 (9th Cir. 2001). The claimant must be able to perform "[t]he actual functional demands and job duties of a particular past relevant job; or [t]he functional demands and job duties of the occupation as generally required by employers throughout the national economy." Id. (quoting SSR 82–61). "This requires specific findings as to the claimant's residual functional capacity, the physical and mental demands of the past relevant work, and the relation of the residual functional capacity to the past work." Id. (quoting SSR 82–62). The ALJ does not have to make explicit findings regarding the claimant's past work as generally and as actually performed. Id. The VE merely has to find that the claimant can or cannot continue his past work as defined by the regulations. Id.

The ALJ found that Plaintiff had the residual functional capacity to perform a full range of work at all exertional levels, with the limitations that he was able to understand, remember and carryout very simple instructions; had adequate concentration, persistence and pace for

simple, but not complex tasks; was limited to occasional interaction with the public; and must have a clearly established job routine with very infrequent changes in routine. (AR 19.) Plaintiff does not challenge the residual functional capacity finding.

1.  Plaintiff's Ability to Perform Past Relevant Work

Plaintiff argues that substantial evidence does not support the ALJ's decision that Plaintiff is able to perform the job of store laborer as it is actually and generally performed. (ECF No. 14 at 23-25.) Defendant counters that Plaintiff pointed to nothing in the record to support his contention that he was unable to perform his previous employment as actually performed. (ECF No. 17, at 7-9.)

At the July 17, 2012 hearing, the VE testified that Plaintiff's prior work would be called "a laborer, stores. Somebody works in the stores, you know, helping and set up the displays and he was folding clothes and putting things away." (AR 63.) The VE classified the job as medium duty activity, unskilled at SVP 2. (AR 63.) When presented with a hypothetical containing Plaintiff's residual functional capacity, the VE opined:

> A   Yeah, that would probably - - that hypothetical person could probably perform the duties of a laborer in stores. That's an unskilled occupation. Again, one and two step tasks that could be clearly defined at the beginning of the day and if they didn't need repeated instruction on those tasks then they could do that job under that.
>
> Q   Alright.
>
> A   So your hypothetical – the 2nd hypothetical would allow that person to do the work as a laborer, stores.

(AR 65.)

The ALJ determined Plaintiff's residual functional capacity assessment and the VE testified that an individual with the stated limitations would be able to perform Plaintiff's past relevant work. This meets the requirement under the regulations and the ALJ did make specific findings to support his decision that Plaintiff would be able to perform his past relevant work.

2.  Plaintiff's Cognitive Ability

Plaintiff also argues that his reading level, arithmetic skills, and inability to drive and use a computer prevent him from being able to work in his previous employment. (ECF No. 14 at

24-25.)  Defendant counters that the ALJ found Plaintiff's allegations that he was illiterate to be less than credible.

The job of store laborer requires a language level of 1.  DOT 922.687-058 (Laborer, Stores), 1991 WL 688132.  This is the lowest language development contemplated by the DOT.  2 Dictionary of Occupational Titles, App. C—Components of the Definition Trailer, see also Donahue v. Barnhardt, 279 F.3d 441, 445 (7th Cir. 2002) ("basic literacy [defined as a vocabulary of 2,500 words, the ability to read about 100 words a minute, and the ability to print simple sentences] is essential for *every job in the economy*") (emphasis in original).

The Social security regulations define illiteracy as an inability to read and write.  20 C.F.R. § 416.964(a)(1).  The ALJ found that Plaintiff has a limited history of reading and writing skills.  (AR 20.)  A marginal education is defined as "ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs.  We generally consider that formal schooling at a 6th grade level or less is a marginal education."  20 C.F.R. § 416.964(a)(2).

Substantial evidence supports the ALJ's finding that Plaintiff's educational level allows him to do simple, unskilled jobs.  Plaintiff testified that he attended school through eighth grade, although he reads at a second or third grade level.  (AR 50-51.)  Plaintiff also testified he is able to recognize small words.  (AR 57.)

Dr. Rana conducted a neurological examination on August 24, 2010.  (AR 363-365.)  Plaintiff told Dr. Rana that he could only write his name, cannot read at all, and was in special education.  (AR 363.)  Dr. Rana found Plaintiff only able to write his name and unable to read a simple sentence.  (AR 364.)

However, Dr. Jonathan Gonick-Hallows conducted a psychological examination on this same date.  (AR 367-370.)  Plaintiff reported a second grade comprehension level and that he had not been in school after the third grade.  (AR 367.)  Dr. Gonick-Hallows noted that Plaintiff did fill out the intake form, with fair spelling, but poor handwriting.  (AR 367.)

Dr. Gonick-Hallows found that Plaintiff was able to recall only 4 digits in the forward direction, while his long-term memory seemed better, but difficult to assess.  (AR 368.)

Plaintiff's abstract reasoning ability in the verbal and visual realm were mildly below average. (AR 368.) He was able to do only simple arithmetic calculations which he did on his fingers. (AR 368.) Vocabulary and syntax were about average. (AR 368.) Additional testing suggested that Plaintiff had auditory and visual processing problems, academic deficits, and anxiety features interfering with his performance. (AR 369.)

Dr. Gonick-Hallows opined that Plaintiff appeared to have some receptive auditory processing problems. (AR 370.) This might make it difficult for him to understand and follow complex instructions, but cognitively he appeared able to carry out simple cognitive tasks while often needing extra instruction to understand what is expected. (AR 370.) Plaintiff's background intellectual functioning was found to be at least average with academic insufficiencies. (AR 370.)

On September 16, 2010, a state agency physician, Dr. Morando prepared a mental residual functional capacity assessment. (AR 383.) Dr. Morando found Plaintiff moderately limited in his ability to understand and remember detailed instructions; ability to carry out detailed instructions; ability to maintain attention and concentration for extended periods; ability to sustain an ordinary routine without special supervision; ability to interact appropriately with the general public; ability to accept instructions and respond appropriately to criticism from supervisors; ability to get along with coworkers and peers without distracting them or exhibiting behavioral extremes; and ability to respond appropriately to changes in the work setting. (AR 383-384.) Plaintiff was found to be not significantly limited in any other area. (AR 383-384.) Dr. Morando opined that Plaintiff's ability to understand, remember and carry out very simple instructions was not impaired; ability to maintain adequate concentration, persistence and pace for simple tasks, but not complex tasks is mildly impaired; ability to relate with others is compromised; and ability to adapt to routine changes and work related stress is mildly to moderately impaired. (AR 385.)

The ALJ's decision that Plaintiff has the cognitive ability to work as a store laborer has substantial support in the record.

///

C.     **Plaintiff's Credibility**

Finally, Plaintiff contends the ALJ erred by finding that he was not a credible witness. (ECF No. 14 at 25-29.) Defendant counters that the ALJ provided valid reasons for finding Plaintiff not to be credible. (ECF No. 17 at 10-13.)

"An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment." Orn v. Astrue, 495 F.3d 625, 635 (9th Cir. 2007) (internal punctuation and citations omitted). Determining whether a claimant's testimony regarding subjective pain or symptoms is credible, requires the ALJ to engage in a two-step analysis. Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012). The ALJ must first determine if "the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal punctuation and citations omitted). This does not require the claimant to show that his impairment could be expected to cause the severity of the symptoms that are alleged, but only that it reasonably could have caused some degree of symptoms. Smolen, 80 F.3d at 1282.

Second, if the first test is met and there is no evidence of malingering, the ALJ can only reject the claimant's testimony regarding the severity of his symptoms by offering "clear and convincing reasons" for the adverse credibility finding. Carmickle v. Commissioner of Social Security, 533 F.3d 1155, 1160 (9th Cir. 2008). The ALJ must specifically make findings that support this conclusion and the findings must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony. Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004) (internal punctuation and citations omitted). In assessing the claimant's credibility, the ALJ may consider "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; [and] (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment. . . ." Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting Smolen, 80 F.3d at 1284).

The ALJ found Plaintiff's testimony to be less than credible for numerous reasons. Plaintiff challenges each reason stated by the ALJ. While the Court does agree that several reasons stated by the ALJ lack substantial support in the record, specifically in Plaintiff's activities of daily living and the finding that Plaintiff had accepted a new job, the ALJ set forth several other reasons that do have substantial support in the record.

Plaintiff challenges the finding that the record demonstrates generally unremarkable clinical findings and argues that this is due to the fact that Plaintiff has been incarcerated for most of his life. (ECF No. 14 at 26.) Defendant contends that Plaintiff has been incarcerated for most of the last two decades and has had access to medical care. (ECF No. 10.)

The ALJ stated that Plaintiff reported having seizures, a brain tumor, and depression but the record documents insufficient objective evidence of these conditions. (AR 20.) The ALJ found that the medical record includes generally unremarkable clinical findings and shows Plaintiff has a history of non-compliance with prescription Dilantin and psychotropic medications. (AR 20.) The ALJ further found that Plaintiff has not sought regular mental health or medical treatment suggesting his impairments are not severe enough to require regulative treatment. (AR 20.) The record notes weekly psychotherapy, but no treatment records were provided. (AR 21.)

The medical record demonstrates that Plaintiff did receive medical treatment for his seizure disorder and generally reflects that Plaintiff's seizures are well controlled when he is on medication, but that he has a history of non-compliance with treatment. (AR 299, 304, 305, 307, 316, 317, 319, 321, 323, 325, 326, 327, 340.) Plaintiff's prison records and consultative examination reveal generally normal findings except for low Dilantin levels. (AR 280-284, 292-295, 304, 305, 313, 314, 315, 317, 319, 320, 321, 328.) Several records reflect normal exams other than rectal or foot problems. (AR 311, 312, 318, 323, 324.) One medical record notes that although Plaintiff states he is taking his medication as prescribed it is doubtful because his Dilantin levels are low. (AR 305.) Similarly, Dr. Rana conducted a consultative examination and reported normal findings with the only recommendation being seizure precautions. (AR 363-365.)

Plaintiff was evaluated several times for mental health issues due to psychiatric issues while in custody. (AR 297-299, 330-332.) The record notes that Plaintiff refused to take medication. (AR 298.) Evaluations showed no indications of depression or any type of thinking disorder. (AR 298, 331.) Routine radiologic and laboratory examination returned normal results. (AR 299.) Plaintiff was found to have a GAF of 80. (AR 301, 332.) Similarly, Dr. Gonick-Hallows found no indication of any thought disorder or psychotic symptoms. (AR 368.)

The ALJ properly considered Plaintiff's generally normal findings and lack of compliance with treatment in determining he was less than credible regarding his subjective medical and psychological complaints.

Additionally, the ALJ found that while Plaintiff has a mixed learning disorder with auditory and visual processing problems and short-term memory deficits, he scored a full-scale IQ of 80, in the low-average range, on objective cognitive testing. (AR 20.) Plaintiff was able to fill out an intake form with fair spelling. (AR 20.) Also, while Plaintiff testified that he was unable to read, the consultative examiner noted that he was able to fill out an intake form. (AR 21.) Plaintiff told a consultative examiner that he had only completed third grade, but testified at the hearing that he completed eighth grade, suggesting he may overstate his reading and writing difficulties. (AR 21.)

Plaintiff stated on multiple occasions that he was unable to read, however inconsistently stated that he was able to read at a second or third grade level and could read small words. (AR 45, 51, 57, 363, 367.) Additionally, while Plaintiff stated he could only write his name, Plaintiff's ability to fill out the intake form with fair spelling supports the ALJ's finding that Plaintiff does have more ability to read and write than he claims. The ALJ properly considered Plaintiff's inconsistent statements and ability to complete the intake form to determine that Plaintiff may overstate his reading and writing difficulties.

Finally, Dr. Gonick-Hallows found that, while Plaintiff does have some auditory and visual processing problems and academic deficits, his background intellectual functioning was at least average with an IQ score in the low average range of 80. Dr. Gonick-Hallows opined that Plaintiff cognitively appeared to be able to carry out simple cognitive tasks while needing extra

1  instruction to understand what is expected.  (AR 369-370.)

2  The ALJ provided "clear and convincing reasons" that are supported by substantial evidence in the record to find that Plaintiff's disability was not as limiting as he claimed.

### V.

### CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ did not err in determining Plaintiff is capable of performing past relevant work as a store laborer and has not been under a period of disability as defined in the Social Security Act from the date his application was filed. Accordingly,

IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner of Social Security is DENIED.  It is FURTHER ORDERED that judgment be entered in favor of Defendant Commissioner of Social Security and against Plaintiff Lee Vester Hall.  The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated:  __**December 30, 2014**__

UNITED STATES MAGISTRATE JUDGE